UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

DARINDA S. REDDING-CARR,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting
Commissioner of Social Security,

    Defendant.

Case No. 12-2014

## REPORT AND RECOMMENDATION

    In October 2010, Administrative Law Judge (ALJ) Peter Caras denied disability insurance benefits to Plaintiff Darinda S. Redding-Carr. In November 2011, this decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

    In July 2012, Plaintiff filed a Motion for Summary Judgment (#14) against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, appealing the denial of her application for disability insurance benefits. In October 2012, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#20). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment (**#14**) be **DENIED**, and Defendant's Motion for an Order Which Affirms the Commissioner's Decision (**#20**) be **GRANTED**.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, the Acting Commissioner of Social Security, is substituted for Michael Astrue as the defendant in this suit. Fed. R. Civ. P. 25(d).

## I.  Background
### A.  Procedural Background

In September 2004, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of November 27, 2003.  Plaintiff's application was denied initially and upon reconsideration.  In January 2008, ALJ Alice Jordan held a hearing at which Plaintiff and Bob Hammond, a vocational expert, testified.  In March 2008, ALJ Jordan issued an unfavorable decision, finding Plaintiff not disabled under the Social Security Act and denying her benefits.  In March 2010, the Appeals Council vacated the decision and remanded the case for reconsideration.

In September 2010, ALJ Peter Caras heard testimony from Plaintiff and Ronald Malik, a vocational expert.  In October 2010, ALJ Caras determined that Plaintiff was not disabled pursuant to the Social Security Act and denied benefits.  (R. 27.)  In November 2011, the Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision is the final decision of the Commissioner.  *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).  Plaintiff now seeks review from this Court pursuant to 42 U.S.C. § 405(g).

### B.  Plaintiff's Medical Record

Both parties and the ALJ described Plaintiff's medical background in detail.  The Court briefly adds the following.

In 1985, Plaintiff was in a car accident which injured her face and neck.  She began seeing Dr. Heim in January 2000.  The medical record is silent from January 2000 until January 2002, except for one lab report in July 2000, but by January 2002, Dr. Heim had begun prescribing Plaintiff 90 tablets per month of hydrocodone-acetaminophen, also called Lorcet or Vicodin.  Plaintiff has continued taking it since that time.  In February 2002, Plaintiff was in another car accident, but she was able to return to work.  Between April 2002 and January 2004, Plaintiff complained of headache pain and continued taking prescribed medications.

In January 2004, Plaintiff went to the emergency room at St. Mary's Hospital, complaining of a migraine.  She received a shot that made her feel "100% better."  In June 2004,

Plaintiff requested Imitrex, a shot used to treat migraine pain. Illinois State Disability doctors examined Plaintiff in December 2004 and January 2005. In March 2005, doctors completed the physical and mental residual functional capacity (RFC) assessments. Between September and November 2005, Plaintiff had difficulty getting her prescriptions for Lorcet and Imitrex apparently because she changed doctors, first consulting Dr. Heim, then Dr. Smith, then returning to Dr. Heim. She reported running out of medications during this time. In December 2006, Dr. Heim increased Plaintiff's hydrocodone prescription from 90 to 120 tablets per month. In late April 2007, Plaintiff spent a few days at Heritage Behavorial Health Center for mental health treatment. In November 2007, Plaintiff had a migraine and an accompanying herpes outbreak due to stress. Plaintiff kept a migraine calendar for 2007.

On May 21, 2008, Dr. Heim completed a Headache/Migraine Impairment Form consisting of a few questions with short answers. The form includes the following statements: (1) Dr. Heim has been treating Plaintiff for headaches since January 2000; (2) neither the frequency nor the severity of the headaches has been refractory[2] to treatment; (3) Plaintiff averages three headaches a month and they "cause 2-day disability"; (4) Plaintiff takes several medications to treat the headaches; and (5) in Dr. Heim's opinion, Plaintiff would have to withdraw from work or a work-like setting due to the occurrence of one of the headaches. (R. 2091.)

In December 2008, Plaintiff reported running out of Vicodin/Lorcet before the end of the month. In both May and December 2008, Dr. Heim suggested that Plaintiff supplement the Vicodin/Lorcet with Benadryl, Advil, or Aleve. Plaintiff's health insurance coverage ended in December 2008. In April 2009, Plaintiff requested a pill as a substitute for the expensive Imitrex shot as well as a muscle relaxer for shoulder and neck muscles. By September 2009, Plaintiff had begun taking Maxalt, a pill for migraine pain. From October 31, 2009, until November 24, 2009, Plaintiff was hospitalized due to a ruptured gastric ulcer.[3]

---

[2] According to *The American Heritage Medical Dictionary* (2007), refractory means "resistant to treatment, as a disease" or "unresponsive to stimuli, as a muscle or nerve fiber." *Refractory*, The Free Dictionary by Farlex, http://medical-dictionary.thefreedictionary.com/refractory (last visited July 11, 2013).

[3] Plaintiff does not argue that her ulcer contributes to her disability.

From January 2002 until March 2010, Dr. Heim consistently prescribed Plaintiff migraine and pain medications including hydrocodone, propranolol, Imitrex, and Maxalt among numerous other medications, and he increased the dosage during this period.

### C. Testimony at the Hearings

At the first hearing in January 2008, Plaintiff testified that she was forty-five years old, 5' 2" tall, and weighed 110 pounds. Plaintiff testified that she worked as a truck driver for a trucking company from 1996 until she was laid off in 2003. (R. 2109.) She expressed concern about whether anyone would hire her because of her medications, migraines, and sleeping disorder. (R. 2110.) She has a migraine "at least once a week." (R. 2117.) She testified that the migraines do not "last anymore than a day or so" because "they finally put me on Imitrex shots" in 2004. (R. 2117.) She notes the side effects of the shots make her "thrash," or cry, and wear her down to the point she falls asleep. (R. 2118.) She stated, "I have a headache everyday all day. I wake up with a headache every day." (R. 2121.) She does not know what factors trigger them. (R. 2128.)

Plaintiff's typical day includes: waking up late, caring for her animals, eating, sitting down and watching television, sleeping, getting dinner, and watching more television. (R. 2112.) Plaintiff testified that she watches television for eight hours a day, and when not watching television, she does puzzles or makes jewelry. (R. 2113.) She added that in 2003 she stopped doing social activities like going out because she lost her job and got a divorce after twenty years. (R. 2008, 2113.) Additionally, although her current husband does the housework, Plaintiff can unload the dishwasher. (R. 2113.) Plaintiff testified that she can sit or stand for thirty to forty-five minutes. (R. 2119.) She also noted that she can use her arms (R. 2111), and "lift something . . . off the floor." (R. 2120). She can shower, dress, drive, and shop for groceries. (R. 2125.) Plaintiff also testified that her appetite and weight have not changed during the last couple years. (R. 2125.).

At the September 2010 hearing following remand, Plaintiff testified that she has trouble concentrating and taking care of her house, so her husband "basically does everything" for her

4

including vacuuming and grocery shopping. (R. 2140.) Plaintiff testified that her psychiatric issues were primarily treated by her family physician Dr. Heim. (R. 2140.) She has not consulted a psychiatrist, but she thinks she has attention deficit disorder, compulsive disorder, and bipolar disorder. (R. 2141.) She notes that she shakes because of all the medicine that she takes. (R. 2141-42.) She takes Amitryptline for brain seizures, Propranolol for migraine prevention, Lorcet for pain reduction, and, when she can afford them, Imitrex shots. (R. 2143.)

Plaintiff described her headaches as starting "in my temple and my face area, down the back of my neck, and then I'll starting getting sick to my stomach and start vomiting and then be in severe pain. I can't [stand] light, noise." (R. 2142.) A headache "usually lasts a couple of days up to a week." (R. 2143.) She testified that the migraines are more frequent and incapacitate her, which she said affects her memory. (R. 2144.) Plaintiff testified that headaches incapacitate her on average fifteen days per month. (R. 2150-51.) She also stated that medicines help with the pain but do not make it go away. (R. 2147-48.) Plaintiff stated, "my brain is awake all night long. It just never shuts down even with the medication, but I couldn't handle it without the medication." (R. 2149.)

Plaintiff notes that she worked several days with migraines while working for the trucking company. (R. 2149.) She is able to watch her daughter's boys and drive across town unless she becomes confused, gets lost, or gets blurred vision. (R. 2146-47.) She adds that she cannot lift more than a case of soda due to her car accident which "damaged several of the upper vertebrae in my neck, [and] complete[ly] tore off the side of my face." (R. 2145.) She testified that she uses a cane regularly but that she did not have it at the hearing. (R. 2147.)

### D. The ALJ's Decision

To be entitled to social security disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1). To determine disability, the Commissioner uses a five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a

severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively-disabling impairment listed in the Regulations; (4) whether the claimant has the residual functional capacity to perform her past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy. Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work she is still able to perform despite limitations. 20 C.F.R. § 404.1545. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows she is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ's decision followed this five-step process. At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the alleged onset date of November 27, 2003. (R. 19.) At the second step, the ALJ determined that Plaintiff has severe impairments including headaches, anxiety disorder, depression, and arthritis. (R. 19.) At the third step, the ALJ determined that Plaintiff's condition did not meet or medically equal any of the impairments listed in the Regulations. (R. 20.) The ALJ determined that "there is no evidence the claimant's migraine headaches meet the requirement of any neurological impairment under listing 11.00." (R. 21.) The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 4041567. (R. 23.) The ALJ limited Plaintiff to work involving only occasional climbing, balancing, stooping, crouching, crawling, or kneeling; no climbing of ladders, ropes, or scaffolds; no concentrated exposure to unprotected heights or unprotected hazardous machinery; and, because of her pain, headaches, anxiety, and depression[4], to unskilled work that is not fast-paced and involves no strict quotas but can be completed in an eight-hour shift. (R. 23.) Based on this RFC, at step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as a truck driver. (R. 26.) At step five, the ALJ determined that there are a significant number of jobs available in the national economy that

---

[4] The ALJ stated that he gave Plaintiff the benefit of the doubt "in finding that her alleged anxiety has limited her in a manner consistent with" the RFC and "with regard to her reports of depression, anxiety, pain and headaches in limiting her to light, unskilled work." (R. 24, 25.)

6

Plaintiff can perform despite her impairments.  (R. 26.)  The ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of claimant's symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (R. 24.)  Accordingly, the ALJ found that Plaintiff was not disabled, and therefore she was not eligible for social security benefits.  (R. 27.)

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The Court's review is confined to the ALJ's decision.  *SEC v. Chenery Corp*, 318 U.S. 80, 93-95 (1943); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). The findings of the ALJ as to any fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010).  Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995); *see Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

## III.  Analysis

Plaintiff's sole argument is that the ALJ erred when assessing Plaintiff's credibility and therefore his RFC finding that Plaintiff was capable of light, unskilled work was wrong.

### A.  Credibility

Regarding Plaintiff's credibility, the ALJ first stated that "the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the

7

extent they are inconsistent with the above residual functional capacity assessment."[5] (R. 24.) The ALJ then gave a lengthy explanation of his reasoning including references to the medical record. (R. 24.) He incorporated the discussion from the March 2008 decision of the medical evidence before March 2008 and also discussed evidence submitted between May 2008 and October 2010. (R. 24-25.) The ALJ summarized his credibility assessment as follows:

> [T]he medical evidence, laboratory findings and the claimant's reported activities during the years in question indicate that her functioning is considerably greater than she alleges. In summary, the undersigned does not find the testimony of the claimant, that she is unable to sustain any full time work activities, to be fully supported by the record. As discussed above, inconsistencies in the record regarding the claimant's symptoms contribute to a conclusion that the claimant is not fully reliable. While the claimant establishes impairments that could reasonably be expected to produce some of the symptoms alleged, support for the claimant's allegations as to the frequency, intensity and persistence of these symptoms is lacking in the record. The undersigned also does not fully accept the claimant's allegations due to inconsistencies regarding the claimant's resultant limitations and her actual functioning, also noted above.

R. 26.

Plaintiff argues that the ALJ improperly discounted her claims of headache pain. In particular, Plaintiff states that the medical record is "consistent with the reality that Plaintiff's headaches and attendant pain and fatigue are disabling even with the benefit of multiple medications." (#14-1, p. 4.) In support, she states that (1) since her onset date of November 27, 2003, she has been taking a combination of prescribed medications which she would not need if she was not experiencing significant migraine headaches; (2) when she could not afford an Imitrex shot, she substituted Benadryl plus Lortab which shows she continues to experience migraine headaches; and (3) she sometimes runs out of medications before the month ends. She also notes that Dr. Heim completed a Headache/Migraine Impairment Form in May 2008 that indicated that Plaintiff's headaches occur an average of three times per month and result in a

---

[5] Although the Seventh Circuit is critical of the use of boilerplate language in general, "[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Here, the ALJ's credibility assessment was not limited to boilerplate language; instead, the ALJ provided a detailed discussion of credibility. Thus, the ALJ's use of boilerplate language does not constitute reversible error in this case.

8

two-day "disability."[6] (R. 2091.) The form also indicates that due to the occurrence of the headaches the claimant would have to withdraw from work or a work-like setting. (R. 2091.)

There is no dispute that Plaintiff has been taking a number of medications and that she has continued to have headaches. However, Plaintiff's primary argument seems to be that even though "medication and other therapies are most effective" (#14, p.4), her headache pain is nevertheless incapacitating and she cannot work fulltime. In support, Plaintiff relies on a letter[7] dated November 15, 2010 (R. 2096), in which Dr. Heim explains the statements he made in his Headache/Migraine Impairment Form – in particular his statement that Plaintiff's headaches were not refractory to treatment.[8] As a general rule, the Court cannot consider any evidence that was not before the ALJ. *Eads v. Sec. of the Dep't of Health and Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). Accordingly, the Court did not consider Dr. Heim's November 2010 letter when reviewing the ALJ's decision.

In assessing credibility, the ALJ stated that Plaintiff had failed to mention her headaches at numerous doctor appointments. (R. 24.) Some of those appointments were for specific complaints not related to Plaintiff's headaches and Plaintiff explains that some of the appointments occurred while she was on additional pain medication following surgery related to

---

[6] The Court notes that the question of whether a claimant is disabled is reserved to the ALJ and a statement by a physician that a claimant is disabled is not dispositive. 20 C.F.R. § 1527(d), (d)(1).

[7] After the October 2010 decision in the case, Plaintiff submitted additional documents to the Appeals Council with her request for review. In her brief, she discusses only the letter from Dr. Heim dated November 19, 2010. (R. 2096.)

[8] Plaintiff submitted this letter for the first time to the Appeals Council with her request for review. Had the Appeals Council granted that request and issued a decision on the merits, we would have been free to consider all of the evidence which was before the Council. *Wolfe v. Shalala*, 997 F.2d 321, 322 n.3 (7th Cir. 1993) (citing *Eads v. Sec. of the Dep't of Health and Human Servs.,* 983 F.2d 815, 817 (7th Cir. 1993)). Instead, the Appeals Council denied Plaintiff's request to review the ALJ's decision, so the ALJ's October 2010 decision stands as the Commissioner's final decision. Only the October 2010 decision and the evidence that was before the ALJ at the time of the decision is now before the Court. Although technically a part of the administrative record, the Court cannot consider the additional evidence submitted to the Appeals Council as a basis for a finding of reversible error. *Id.*

9

a ruptured gastric ulcer. Although these appointments do not particularly support the ALJ's assessment, the ALJ's consideration of the appointments does not persuade the Court that his credibility assessment is patently wrong.

In addition, the ALJ noted that the record contained no evidence of any worsening in her condition since 2003 and that the objective record contained no evidence that her headaches have increased in frequency. The ALJ observed that Plaintiff had worked for several years with headaches and did not stop working until she was laid off from her job in 2003, and that no treating doctor had placed any restrictions on Plaintiff's activities. (R. 24.) Plaintiff has not challenged any of these reasons for the ALJ's assessment.

Finally, the ALJ stated that "nothing in the file . . . indicate[s] the claimant's conditions are not remediable by treatment and therapy. In fact, a headache form completed by Dr. Heim on May 21, 2008 specifically notes the claimant's headaches are not refractory to treatment." (R. 24.)

As noted above, Plaintiff's primary reason for contending that the ALJ's credibility determination was patently wrong is her contention that her headaches are disabling even with treatment. Plaintiff notes that the Headache/Migraine Impairment Form completed by Dr. Heim indicated that Plaintiff averages three headaches a month and they "cause 2-day disability"; and due to the headaches, Plaintiff would have to withdraw from work or a work-like setting. (R. 2091.) However, as the ALJ pointed out, Dr. Heim also stated that neither the severity nor the frequency of the headaches were refractory to treatment. (R. 24.) The ALJ relied on this statement in his assessment. Based on this explanation and the additional reasons the ALJ gave in assessing Plaintiff's credibility, the Court cannot conclude that the ALJ's credibility determination was patently wrong.

### B.  Remand Pursuant to Sentence Six

Although Plaintiff has not asked for remand so that the ALJ can consider the additional evidence she provided after the ALJ's decision, Defendant raised the question of a remand pursuant to sentence six of 42 U.S.C. § 405(g), arguing that the Court should not allow such a remand.

Sentence six of 42 U.S.C. § 405(g) authorizes a court to remand a case to the Social Security Administration for consideration of new evidence. Plaintiff could have requested remand on the basis of sentence six as well as sentence four. She did not do so. This situation is similar to one described in *Eads v. Secretary of Department of Health & Human Services*, in which the Seventh Circuit court stated as follows:

> [Plaintiff Eads] stakes his all on persuading us to reverse the denial of disability benefits on the ground that the administrative law judge's decision is erroneous when evaluated in light of all the evidence in the case, including evidence that the administrative law judge could not have considered because it was never submitted to him. This we cannot properly do. It would change our role from that of a reviewing court to that of an administrative law judge, required to sift and weigh evidence in the first instance, rather than limited as we are to reviewing evidentiary determinations made by the front-line factfinder. *Ehrhart v. Secretary,* 969 F.2d 534, 538 (7th Cir.1992). We could require the administrative law judge to reconsider his decision if Eads brought himself within the scope of section 405(g) by persuading us that the doctor's letter was really new and material, which he has not attempted to do. That would be different from making the decision on benefits ourselves, as Eads in effect invites us to do.

*Id.*, 983 F.2d 815, 817-18 (7th Cir. 1993). Like the plaintiff in *Eads*, Plaintiff has not requested remand on the basis of sentence six and the Court will not address the merits of the issue.

Here, Plaintiff's only reason for arguing that the ALJ was wrong in finding that Plaintiff was capable of light, unskilled work was that his credibility assessment was wrong. Because the Court concluded that the ALJ's credibility assessment was not patently wrong, it follows that the ALJ did not err by finding that Plaintiff was capable of light, unskilled work.

### V. Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (**#14**) be **DENIED** and that Defendant's Motion for an Order Which Affirms the Commissioner's Decision (**#20**) be **GRANTED**.

The Court advises the parties that any objection to this recommendation must be filed in writing with the Clerk within ten (10) days after service of a copy of this recommendation. *See*

28 U.S.C. 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21. Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 11th day of July, 2013.

s/DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE
